[No. 8133-1-I. Division One. July 28, 1980.]

Geraldine C. Newcomer, *Appellant,* v. Weyerhaeuser Company, *Respondent.*

*John C. Kouklis* and *Davies, Pearson, Anderson, Seinfeld, Gadbow, Hayes & Johnson, P.S.,* for appellant.

*D. L. Donaldson* and *Walstead, Mertsching, Husemoen, Donaldson & Barlow,* for respondent.

DORE, J.—Geraldine C. Newcomer appeals from a judgment entered on a jury verdict. Weyerhaeuser cross–appeals from the denial of a motion for remittitur for excessive damages.

## ISSUES

1. Where a jury returns a defective verdict which is sent back for reconsideration, may its deliberation be restricted to considering only one portion of the verdict, or does the entire verdict remain under the jury's control?

2. Should a motion for remittitur be granted where there is no evidence to support the jury's damage award?

## FACTS

Gary Newcomer was severely and permanently injured on June 8, 1973, when he fell approximately 50 feet from an elevated water tank owned by Weyerhaeuser. He had been sandblasting and painting the tank for his employer, Northwest Tank and Maintenance Company. A "spider rod" which supported the planking he was working on broke allegedly because Weyerhaeuser failed to inspect and replace it. Approximately 2 years later, on August 6, 1975, Newcomer committed suicide.

Geraldine Newcomer, his widow, commenced this action against Weyerhaeuser on two grounds. First, she claimed damages on behalf of the estate for medical and hospital expenses and loss of income from the date of her husband's injury to the date of his death. Second, she sought damages on behalf of herself and her children occasioned by her husband's suicide, alleging that it occurred as the proximate result of an uncontrollable impulse caused by his previous accident.

Instruction No. 16 stated that if the verdict was for the plaintiff, but Newcomer's death was not a proximate result of Weyerhaeuser's negligence, it should only include as elements of damages the medical and hospital expenses incurred and loss of income resulting from the injury. After trial, the jury returned its verdict and answered eight specific questions which had been submitted to it. The trial judge read the jury's answers to counsel:

> THE COURT: . . . The verdict was handed to the bailiff, and the jury has not yet been polled, answers question No. 1, "Was the defendant negligent?" "Answer: Yes." "Question 2: Was the defendant's negligence a proximate cause of the original accident and injury to Gary Newcomer?" "Answer: Yes." "Question 3: What is the total amount of plaintiff's damages for Gary Newcomer's injuries from the original accident to the date of his suicide?" And the jury has written in in pencil, "$75,000 to widow and children," plus sign, and then the word "plus," "plus all court cost," singular, "legal expense and medical

expenses." And "Question 4: Was the defendant's negligence a proximate cause of Gary Newcomer's suicide?" "Answer: No." Question 5 is blank. "Question 6: Was Gary Newcomer negligent in his actions at the time of the original accident?" "Answer: No." The rest of the questions, 7 and 8, are not answered. It is signed by [the] foreman.

The trial judge concluded that although the jury had determined liability, it had returned a defective verdict because it failed to calculate a specific amount for medical expenses. After hearing argument, the court, over objection, polled the jury concerning answers to questions Nos. 1, 2, 4 and 6. Each juror stated that the answers were his or her own verdict and the verdict of the jury. The trial court then sent the jury back only to reconsider its answer to question No. 3. In the course of its deliberation, the jury posed a written question: "In addition to lost wages and medical costs, may we add a benefit for the accident's happening?" The court's written reply was, "No." When the jury returned a second time, question No. 3 had been filled in for the amount of $45,367. The jury was polled and the verdict accepted. Geraldine Newcomer moved for a mistrial; Weyerhaeuser moved for remission for excessive damages, contending that the proof on damages showed that the total amount allowable under instruction No. 16 was approximately $33,341. In denying Newcomer's motion for mistrial, the trial judge gave the following reasons:

> There wasn't any inconsistency about [the jury's] direct findings that Weyerhaeuser was negligent and the proximate cause of Mr. Newcomer's injuries. There wasn't any inconsistency with that in view of the evidence, and the impending audit the next day, the finding of the jury was unanimous the suicide wasn't caused by the injury. There wasn't any, really any inconsistency with the finding that his special damages were $75,000 plus medical expenses, plus legal expenses, and out-of-pocket expenses, I think they said. That is not inconsistent. It is just improper in the sense that it is obvious they have to calculate the medical expenses and find what has been proved. They can't leave it up to the judge to do so. Had they said

$1,000, $100,000 or $110,000, I would have accepted the verdict and we would have argued the remittitur afterwards. Obviously the jury wished to give more than what the instruction authorized them to give in the event they found that negligence of Weyerhaeuser caused the accident and that he didn't, his negligence didn't. But it seems to me that if, had we sent them back and say, well, now, you can't give more than that, you will have to reconsider that—of course, I didn't do that. I originally sent the jury back to reconsider their answer to this particular interrogatory. It was simply to straighten up the thing that they had, that was a misunderstanding, all the legal fees and medical expenses, as I said, and come out and give us $110,000, I would have accepted it, as we ultimately did, but when they sent out the question, it seems to me is the question, we are asking, or they are asking if we can give more than the lost wages and medical expenses, that we got in trouble at that stage.

With regard to Weyerhaeuser's motion, the trial court commented that although the damage evidence was "pretty skinny in a lot of ways," the jury was entitled to return the verdict as it did under instruction No. 16 and denied the motion.

## DECISION

ISSUE 1: It is within the trial court's discretion to resubmit a defective verdict to the jury.

The trial court's discretionary authority to return a jury for further consideration of an insufficient verdict is set forth in RCW 4.44.400, which states:

When a verdict is given and before it is filed, the jury may be polled at the request of either party, for which purpose each shall be asked whether it is his verdict; if any juror answer in the negative the jury shall be sent out for further deliberation. If the verdict be informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may again be sent out.

There are no Washington cases which precisely address the issue raised by this appeal. In *Bino v. Veenhuizen*, 141 Wash. 18, 250 P. 450, 49 A.L.R. 1297 (1926), the court held

that a trial court may resubmit a defective verdict to the jury.

> "The judge refused to receive the verdict when given by the jury, and they were instructed to retire, and present a verdict in proper form. Thereupon they retired, and brought in another and different verdict. The first verdict was never recorded, nor does it appear from the record before us that it had ever been affirmed as the unanimous finding of the jury. The jury having retired and brought in a different verdict, which was recorded, it cannot be held that the first is the verdict of the jury, or that it has any validity whatever. The case was still in the hands of the jury upon their second retirement, and, not being bound by their former action, they were at liberty to review the case, and bring in an entirely new verdict."

*Bino v. Veenhuizen, supra* at 22, quoting *Grant v. State,* 33 Fla. 291, 14 So. 757 (1894). While *Bino* approves of the general policy of resubmitting a defective verdict to the jury, it does not disapprove of limiting the scope of consideration. Until a verdict is received and filed for record, a trial court may send the jury back to consider and clarify or correct mistakes appearing on the face of the verdict. *Beglinger v. Shield,* 164 Wash. 147, 2 P.2d 681 (1931).

Other jurisdictions uniformly hold that when the jury has fully understood and had no difficulty with the issue of liability, but failed to properly assess damages, resubmission of the damage question only is proper and not an abuse of discretion. *Sconsa v. Richmond,* 103 N.H. 89, 165 A.2d 595 (1960); *Southern Nat'l Bank v. Pocock,* 29 N.C. App. 52, 223 S.E.2d 518 (1976). A trial court is empowered to make such inquiry of the jury as is necessary to clear up a misunderstanding without first sending the entire case back for reconsideration. *Smith v. S & F Constr. Co.,* 62 Wn.2d 479, 383 P.2d 300 (1963); *McFarlane v. Chicago, M. & St. P. Ry.,* 129 Wash. 230, 224 P. 581 (1924). It has authority to vacate the answer to a particular issue when to do so does not affect or alter the import of the answers to other issues, but has no power to remove irreconcilable inconsistencies in

a verdict by vacating part of it. *Southern Nat'l Bank v. Pocock, supra; Lee v. Rhodes,* 230 N.C. 190, 52 S.E.2d 674 (1949).

In the present case, when the trial judge noted that the jury failed to include an amount for medical expenses, which related only to the amount of damages, it was within the court's sound discretion either to resubmit all issues or to resubmit only the issues as to damages. There was no abuse of the court's discretion in refusing to resubmit all issues.

ISSUE 2: Based upon the evidence presented, the jury, as instructed, could award damages as it did.

It is well settled that a motion to reduce a verdict on the ground that it is excessive is addressed to the sound discretion of the trial court, and its judgment will not be disturbed on appeal absent abuse of that discretion. *Lujan v. Santoya,* 41 Wn.2d 499, 250 P.2d 543 (1952). The jury is given considerable latitude in making its determination when the subject matter is difficult of proof and cannot be fixed with mathematical certainty. *Adams v. State,* 71 Wn.2d 414, 429 P.2d 109 (1967). Whether substantial justice was done depends in large degree upon whether the verdict was so excessive or inadequate as unmistakably to indicate passion and prejudice. *James v. Robeck,* 79 Wn.2d 864, 490 P.2d 878 (1971). Here, the evidence presented does provide the jury with a basis for its verdict and does not indicate passion and prejudice.

Affirmed.

CALLOW, C.J., and RINGOLD, J., concur.