# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50065-5-II |
| Respondent, | |
| v. | |
| ODIES DELANDUS WALKER, | UNPUBLISHED OPINION |
| Appellant. | |

Lee, J. — Odies D. Walker appeals his convictions for aggravated first degree murder, first degree assault, first degree robbery, solicitation to commit first degree robbery, and conspiracy to commit first degree robbery resulting from Walker's role in a robbery and shooting that occurred at a Lakewood Wal-Mart. Walker argues that (1) there was insufficient evidence of premeditation to support the jury's verdict finding Walker guilty of aggravated first degree murder, (2) he received ineffective assistance of counsel, and (3) the trial court improperly influenced the jury's verdict on the first degree assault. We affirm.[1]

## FACTS

Walker was convicted of aggravated first degree premeditated murder, first degree felony murder, first degree assault, first degree robbery, first degree solicitation to commit robbery, and

---

[1] Walker asks us to decline to impose appellate costs if the State prevails in this appeal. The State represents that it will not be seeking appellate costs. Given the State's representation, no appellate costs will be imposed.

first degree conspiracy to commit robbery for his role in planning and executing the 2009 robbery of a Lakewood Wal-Mart that resulted in the death of Loomis security guard Kurt Husted. *State v. Walker*, 182 Wn.2d 463, 469-71, 475, 341 P.3d 976 (2015), *cert. denied*, 135 S. Ct. 2844. In 2015, our Supreme Court reversed Walker's convictions because of prosecutorial misconduct during closing arguments. *Id.* at 480-81, 485.

On remand, the State charged Walker with first degree aggravated murder (Count I), first degree murder (felony murder) (Count II), first degree assault (Count III), first degree robbery (Count IV), solicitation to commit first degree robbery (Count V), and conspiracy to commit first degree robbery (Count VI). On Count I, the State charged an aggravating circumstance alleging that the murder was committed in the course of, in furtherance of, or in immediate flight from first or second degree robbery. The State also alleged separate aggravating circumstances on Count II. And the State included firearm enhancements for both murder charges, the first degree assault, and the first degree robbery. Walker's second jury trial began in January 2017.

The parties stipulated that, on June 2, 2009, Calvin Finley killed Kurt Husted at the Lakewood Wal-Mart. Husted was a Loomis security guard performing the daily deposit pick up at the Lakewood Wal-Mart. The bullet that killed Husted, also struck Wilbert Pina, a Wal-Mart customer, in the shoulder.

The State presented the testimony of numerous other witnesses over seven days of trial. Tonie Williams-Irby was Walker's girlfriend at the time of the robbery. Before the robbery, Williams-Irby and Walker lived together near the Lakewood Wal-Mart. Williams-Irby testified that she heard multiple conversations between Walker, Finley and others planning the robbery.

During one conversation, Williams-Irby heard Finley and Walker discussing how to accomplish getting the money from the guard. When discussing killing the guard, Walker told Finley, "Do whatever you have to do." 8 Verbatim Report of Proceedings (VRP) at 820.

Williams-Irby also testified that, after the robbery, Walker discussed the robbery with her. Walker told Williams-Irby that he was on the phone talking to Finley during the robbery. Williams-Irby testified,

> Well, [Finley] called [Walker] to tell him that when he asked for the moneybag, the guy laughed at him. So [Walker] said shoot the m**********r and hurry up.

8 VRP at 869.

Jessie Lewis also testified at trial. Walker had talked to Lewis about being the shooter in a robbery of an armored car guard at the Lakewood Wal-Mart. Walker told Lewis that Marshawn Turpin would call when the guard went into the store, Finley would grab the money, Lewis would be the shooter, and Walker would drive the get-away car. Before June 2, Lewis, Walker, Finley, and Turpin went to the Lakewood Wal-Mart to rob the armored car courier. Walker gave Lewis a 9-millimeter handgun, which Lewis carried with him into the Wal-Mart. However, Lewis changed his mind and walked out of the Wal-Mart without engaging in the planned robbery, so the robbery did not happen on that day.

The trial court instructed the jury that on aggravated murder in the first degree charge (Count I):

> If you find the defendant guilty of premeditated murder in the first degree as charged in Count I and as defined in Instruction 13, you must then determine whether the following aggravating circumstances exists:
> The murder was committed in the course of, in furtherance of, or in immediate flight from robbery in the first or second degree.

The State has the burden of proving the existence of an aggravating circumstance beyond a reasonable doubt. In order for you to find that there is an aggravating circumstance in this case, you must unanimously agree that the aggravating circumstance has been proved beyond a reasonable doubt.

For the aggravating circumstances to apply, the defendant must have been a major participant in acts causing the death of Kurt Husted and the aggravating factors must specifically apply to the defendant's actions. The State has the burden of proving this beyond a reasonable doubt. If you have a reasonable doubt whether the defendant was a major participant, you should answer the special verdict "no."

Clerk's Papers (CP) at 1047.

The trial court also provided the jury with a special verdict form that stated:

We, the jury, having found the defendant guilty of premeditated murder in the first degree, Count I, on verdict form A, return a special verdict by answering as follows:

QUESTION: Has the State proven the existence of the following aggravating circumstance beyond a reasonable doubt?

The murder was committed in the course of, in furtherance of, or in immediate flight from robbery in the first or second degree.

CP at 1055.

The jury began deliberations on February 8. On February 13, the jury informed the trial court that it had reached its verdicts in the case. While reading the verdicts, the trial court discovered the jury had improperly completed the verdict forms for first degree assault and the lesser included charge of second degree assault. The trial court stated it wanted "to give the jury a fair opportunity to make sure that whatever decision you did make regarding whether it was Verdict Form D or E, that the correct verdict form is, in fact, filled out." 13 VRP at 2447. The trial court instructed the jury to "make sure that you fill out the verdict form that reflects your

4

decision, which is either D or E." 13 VRP at 2447. The jury was sent back to complete the verdict forms again. The jury found Walker guilty as charged.

Before sentencing, Walker filed a motion to dismiss the aggravating factor alleged in Count I. Walker argued that, although the jury was instructed that the jury had to find beyond a reasonable doubt that Walker was a major participant for the aggravator to apply, the jury should have been given a definition of major participant and a special verdict form asking if Walker was a major participant. The trial court denied the motion because the defense did not request any jury instructions defining "major participant" or any aggravating circumstances special verdict form.

At the sentencing hearing, the State acknowledged that a 2013 affidavit from Finley absolving Walker of culpability for the robbery and murder was anonymously sent to the trial court after the jury had reached its verdicts. For the purposes of the record, the State filed a responsive declaration from the lead detective on the case, which stated Finley's declaration was contrary to numerous statements that Finley had previously made during the investigation. However, the State requested that the trial court take no other action on the Finley affidavit. Walker's defense counsel stated, "The defense has no comment." 19 VRP at 2472. The trial court stated it was not taking any further action. The trial court merged the two murder verdicts and imposed the statutorily proscribed sentences.

Walker appeals.

ANALYSIS

A.     SUFFICIENCY OF THE EVIDENCE - PREMEDITATION

Walker argues that there was not sufficient evidence of premeditation to support the jury's verdict for first degree aggravated murder. We hold that the State presented sufficient evidence of premeditation to support the jury's verdict.

Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the State, any rational trier of fact can find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When sufficiency of the evidence is challenged, all reasonable inferences from the evidence are drawn in favor of the State and interpreted most strongly against the defendant. *Id*. A claim of insufficiency of the evidence "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id*. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We do not review credibility determinations made by the trier of fact. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

To prove aggravated first degree murder, the State must prove the defendant caused the death of another person with premeditated intent and the existence of at least one statutory aggravating factors.[2] RCW 10.95.020; RCW 9A.32.030(1)(a). "[T]he premeditation required in order to support a conviction of the crime of murder in the first degree must involve more than a

---

[2] In this case, the State alleged the murder "was committed in the course of, in furtherance of, or in immediate flight from. . .robbery in the first or second degree." RCW 10.95.020(11)(a). Walker does not challenge the sufficiency of the evidence supporting the aggravating factor.

moment in point of time." RCW 9A.32.020(1). Premeditation is " 'the deliberate formation of and reflection upon the intent to take a human life' and involves 'the mental process of thinking beforehand, deliberation, reflection, weighing, or reasoning for a period of time, however short.' " *State v. Pirtle*, 127 Wn.2d 628, 644, 904 P.2d 245 (1995) (quoting *State v. Gentry*, 125 Wn.2d 570, 597-98, 888 P.2d 1105 (1995) *cert. denied*, 518 U.S. 1026 (1996)).

Here, Williams-Irby testified that she heard Walker engaged in multiple conversations regarding planning the Wal-Mart robbery. During one of these conversations Walker specifically discussed the possibility of killing the guard and told Finley, "Do whatever you have to do." 8 VRP at 820. And Williams-Irby testified that after the robbery Walker told her that he was on the phone with Finley during the robbery and told Finley to "shoot the m********r and hurry up," when Husted did not immediately give Finley the money. 8 VRP at 869.

In addition, Lewis testified that he participated in planning the robbery before he decided to not go through with robbery. Lewis believed Walker intended him to be the shooter and provided Lewis with a gun to use in the robbery.

Williams-Irby's and Lewis' testimony show that before the robbery, Walker reflected on the possibility of taking the guard's life to effectuate the robbery. And during the robbery, Walker ordered the killing. Thus, Walker ordered the killing of the armored car guard after having previously spent time thinking about killing the guard during the planning of the robbery. The jury found Williams-Irby's and Lewis' testimony credible, and we will not review that determination. The evidence is sufficient to prove premeditation. Therefore, the State presented sufficient evidence to support the jury's verdict for aggravated first degree murder.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the U.S. Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). An ineffective assistance of counsel claim is a mixed question of fact and law that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. *Grier*, 171 Wn.2d at 32-33 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). If the defendant fails to satisfy either prong, the defendant's ineffective assistance of counsel claim fails. *Id*.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id*. We engage in a strong presumption that counsel's performance was reasonable. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A defendant may overcome this presumption by showing that " 'there is no conceivable legitimate tactic explaining counsel's performance.' " *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). Recently, our Supreme Court held that the record before this court must be sufficient for us to determine what counsel's reasons for the decision were in order to evaluate whether counsel's reasons were legitimate. *State v. Linville*, 191 Wn.2d 513, 524-25, 423 P.3d 842 (2018). If counsel's reasons for the challenged action are outside the record on appeal, the defendant must bring a separate collateral challenge. *Id.* at 525.

Prejudice is established if the defendant can show that "but for counsel's deficient performance, the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862.

1.      Failure to Investigate

Walker argues that his counsel's performance was deficient by failing to take any action in regard to Finley's affidavit when it was anonymously mailed to the court. Specifically, Walker argues that defense counsel should have investigated the affidavit or filed a motion for a new trial based on newly discovered evidence. However, based on *Linville*, the record before us on direct appeal is insufficient to make a determination regarding whether defense counsel's performance was deficient.

Here, the record before us contains no information regarding what defense counsel did regarding the affidavit or why. There is no way of knowing when defense counsel learned of the affidavit or what action defense counsel took regarding the affidavit. And although the record is clear that defense counsel did not file any post judgment motions for relief based on the affidavit, there is nothing in the record that provides counsel's reasons for not filing any post judgment motions for relief. Because the appellate record does not establish all of what defense counsel did or did not do or the reasons behind defense counsel's decisions, the record is insufficient for Walker to demonstrate deficient performance related to the affidavit. Therefore, under *Linville*, Walker must bring a separate collateral challenge.

2.      Major Participant Jury Instructions

Walker also argues that defense counsel was deficient for failing to propose an instruction defining "major participant" for the purposes of the aggravating factor for premeditated murder and for failing to propose a special verdict specifically asking for a finding that Walker was a major participant. But Walker only argues that he was prejudiced because "[g]iven the limited circumstantial evidence and shortcomings regarding witness credulity, in particular Ms. Williams-Irby, there is a reasonable probability that, but for counsel's deficient investigation, the court may have granted an instruction defining 'major participant.' " Br. of App. at 42.

However, to show prejudice, Walker is not required to show that the trial court would have granted the request defense counsel should have made. Rather, Walker must show that either an instruction defining "major participant" or a special verdict form specifically asking if Walker was a major participant would have resulted in a "no" verdict on the aggravating factor. *See Kyllo*, 166 Wn.2d at 862 (to show prejudice, the defendant must show that the outcome of the proceeding would have been different). Walker makes no effort to show that he was prejudiced by defense counsel's performance under the appropriate standard.

An even if Walker had argued that he was prejudiced under the appropriate standard, his argument would fail. Case law does not provide or require a definition of "major participant," as long as the major participant requirement is included in the aggravating factor instruction. *State v. Whitaker*, 133 Wn. App. 199, 232-33, 135 P.3d 923 (2006), *review denied*, 159 Wn.2d 1017, *cert. denied*, 552 U.S. 948 (2007); *State v. Thomas*, 150 Wn.2d 821, 842-43, 83 P.3d 970 (2004). But, the jury was properly instructed that in order for the aggravator for premeditated murder to

apply, Walker had to be a major participant in the robbery. And the jury was instructed that if Walker was not a major participant, they should answer the special verdict form "no."

Walker fails to show prejudice resulting from defense counsel's failure to request a jury instruction defining "major participant" or proposing special verdict form specifically find that Walker was a major participant.

C.    IMPROPERLY INFLUENCING THE VERDICT

Walker argues that the trial court improperly influenced the jury's verdict. We disagree.

The trial court is prohibited from improperly influencing the jury's verdict through interference with the deliberative process. *State v. Boogaard*, 90 Wn.2d 733, 739-40, 585 P.2d 789 (1978). However, the judicial interference must take place during the jury's deliberations. *State v. Ford*, 171 Wn.2d 185, 189, 250 P.3d 97 (2011), *cert denied*, 565 U.S. 1269 (2012). If the jury indicates that deliberations have ended by informing the trial court they have reached a unanimous verdict, the trial court does not improperly influence the jury by asking the jury to correct improperly filled out or blank jury forms. *Id.* at 190.

Here, the jury clearly indicated that it had finished deliberating and reached unanimous verdicts. It was only after this point that the trial court required the jury to correct the improperly filled out verdict forms. The trial court did not tell the jury how to fill them out—the trial court only asked the jury to ensure the verdict forms reflected the jury's verdict. Because deliberations had ended, the trial court did not improperly influence the jury's verdict by telling the jury to fill out the verdict forms to properly reflect its verdicts.

Walker also argues that the trial court violated CrR 6.15(f)(2). CrR 6.15(f)(2) states,

11

No. 50065-5-II

> After jury deliberations have begun, the court shall not instruct the jury in such a way as to suggest the need for agreement, the consequences of no agreement, or the length of time a jury will be required to deliberate.

However, once the jury has completed its deliberations, CrR 6.15(f)(2) "has no application." *Ford*, 171 Wn.2d at 191. As explained above, the jury had completed its deliberations and informed the trial court that it had reached a verdict. Accordingly, CrR 6.15(f)(2) does not apply here.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Johanson, J.

Maxa, C.J.