# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54395-8-II |
| Respondent, | |
| v. | |
| BRANDON ROBERT MITCHEL WIXON, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Brandon Robert Mitchel Wixon appeals his judgment and sentence and asks this court to reverse his convictions for first degree assault with a firearm and second degree unlawful possession of a firearm. He argues that the trial court violated his constitutional right to a fair and impartial jury and CrR 6.15(f)(2) by sending the jury back to deliberate in an effort to reach a unanimous verdict after the jury foreperson informed the court that they were deadlocked.

We disagree and affirm his convictions.

FACTS

The State charged Wixon with one count of first degree assault with a firearm enhancement and one count of second degree unlawful possession of a firearm. The case proceeded to a jury trial.

At trial, the defense challenged the accuracy of the two eyewitnesses' identification of Wixon as the shooter of the victim. The victim did not know Wixon and was shot in the upper

thigh area of his left leg while walking down a street in Kelso. No forensic evidence was presented during the two day trial. The State's evidence consisted of testimony by the two eyewitnesses and the police officers who responded to the scene and photographs. In addition, the defense called an expert who testified that the identification procedures were questionable.

On the first day of trial, the State presented the testimony of one of the police officers who responded to the scene and one of the eyewitnesses to the charged assault. On the second day of trial, the State presented the testimony of the second eyewitness to the charged assault and the two other police officers who responded to the scene. At the end of the morning on the second day, the State rested.

In the afternoon on the second day, the defense presented the testimony of Dr. Daniel Reisberg, an expert witness on the reliability of eyewitness accounts; the testimony of the defendant's father David Wixon; and the testimony of the defendant himself. Dr. Reisberg did not offer an opinion that the eyewitness identifications were invalid or problematic and admitted that more often than not, eyewitnesses are right in their identifications. At the end of the second day, the defense rested.

The jury began deliberating after the trial court read them their jury instructions and the parties presented closing arguments. After four hours of deliberations,[1] the jury contacted the bailiff and indicated that they were in a potential deadlock. The court discussed the matter with the attorneys and suggested that it might call the jury back into the courtroom to read to the jury

---

[1] The parties agree that the jury deliberated initially for four hours and then returned to deliberate before reaching a verdict.

No. 54395-8-II

WPIC 4.70,[2] the pattern jury instruction that addresses the probability of the jury reaching a verdict. The State noted the amount of time the jury had been deliberating with the amount of testimony they had heard and said, "I don't think we're at the point where we can consider this a deadlock for mistrial purposes." Verbatim Report of Proceedings (VRP) at 534. Wixon's counsel said that he would be in favor of the jury being brought back in and questioned because he "would like to see how in fact they are in their belief that they are deadlocked" before rendering an opinion on how to proceed. VRP at 534-35.

The trial court brought the jury back into the courtroom. The court first instructed the jury with WPIC 4.70, and then asked the jury foreperson to answer only "yes" or "no" to this question: "Is there a reasonable probability of the jury reaching a verdict within a reasonable time?" VRP at 538. The jury foreperson answered, "No." VRP at 538. After excusing the jury, the court consulted with the attorneys again. The State reiterated its position that it was too early to declare

---

[2] WPIC 4.70 states in relevant part:

> I have called you back into the courtroom to find out whether you have a reasonable probability of reaching a verdict. First, a word of caution: Because you are in the process of deliberating, it is essential that you give no indication about how the deliberations are going. You must not make any remark here in the courtroom that may adversely affect the rights of either party or may in any way disclose your opinion of this case or the opinions of other members of the jury.
>
> I am going to ask your presiding juror if there is a reasonable probability of the jury reaching a verdict within a reasonable time. The presiding juror must restrict [his] [her] answer to "yes" or "no" when I ask this question and must not say anything else.
>
> (Address the following question(s) to the presiding juror:)
>
> Is there a reasonable probability of the jury reaching a verdict within a reasonable time . . .?

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: Criminal 4.70 note on use at 151 (4th ed. 2016) (WPIC).

a mistrial. Wixon's counsel asked the trial court to declare a mistrial, but did not state a reason to support this request. The court said it would "hold off on the mistrial at this point" and have the jury deliberate further.

The trial court brought the jury back into the courtroom and stated:

> Based on several different factors, what I'd like to do at this point is to have the bailiff take you back to the jury room to continue to deliberate in an effort to reach a unanimous verdict. So we're going to get a few more steps in, so I'm just going to invite you to go back to the jury room and continue to deliberate. So we'll send you back.

VRP at 539.

The jury continued deliberating. Subsequently, the jury returned with a unanimous verdict of guilty on all counts. The trial court polled the jury, and each juror responded affirmatively that the verdict is the verdict of the jury and their verdict.

The trial court sentenced Wixon to 200 months in confinement followed by 36 months in community custody. Wixon appeals.

## ANALYSIS

### I. RIGHT TO A FAIR AND IMPARTIAL JURY

Wixon argues that the trial court violated his right to a fair and impartial jury by pressuring the jury into reaching a unanimous verdict after the jury foreperson announced that the jury was deadlocked. The State argues that Wixon cannot affirmatively establish that the trial court's decision to have the jury continue its deliberations improperly influenced its verdict. We agree with the State.

4

A.  LEGAL PRINCIPLES

The right to a fair and impartial jury trial requires that a judge refrain from "coercive pressure" on the jury's deliberations. *State v. Jones*, 97 Wn.2d 159, 164, 641 P.2d 708 (1982); *State v. Boogaard*, 90 Wn.2d 733, 736-37, 585 P.2d 789 (1978). "To prevail on a claim of improper judicial interference with the verdict, a defendant 'must establish a reasonably substantial possibility that the verdict was improperly influenced by the trial court's intervention.'" *State v. Ford*, 171 Wn.2d 185, 188-89, 250 P.3d 97 (2011) (quoting *State v. Watkins*, 99 Wn.2d 166, 178, 660 P.2d 1117 (1990)). "We consider the totality of circumstances regarding the trial court's intervention into the jury's deliberations." *Ford*, 171 Wn.2d at 189.

The right to a jury trial includes "the right to have each juror reach [their] verdict uninfluenced by factors outside the evidence, the court's proper instructions, and the arguments of counsel." *Boogaard*, 90 Wn.2d at 736. Instructions that suggest "a juror who disagrees with the majority should abandon his conscientiously held opinion for the sake of reaching a verdict invades that right, however subtly the suggestion may be expressed." *Boogaard*, 90 Wn.2d at 736. In determining whether to discharge a jury, the trial court should evaluate "the length of time the jury had been deliberating, viewing that in the light of the volume and complexity of the evidence." *Boogaard*, 90 Wn.2d at 739.

B.  THE TRIAL COURT'S INSTRUCTION TO CONTINUE DELIBERATING

Wixon's argument is based on his assertion that the amount of time the jury deliberated is a sufficient amount of time for the court to declare a mistrial and discharge the jury. Here, the jury heard testimony from eight witnesses over a day and a half. After four hours of deliberations, the jury contacted the bailiff and indicated that they were in a potential deadlock. The trial court

discussed its options with counsel for the State and for Wixon. The court asked the jury about the likelihood of reaching a unanimous decision. The court evaluated the length of time the jury had been deliberating in light of the amount of testimony they listened to when it conferred with counsel for the parties. Given the totality of the circumstances, the court was well within its discretion to instruct the jury to continue deliberations. *See Boogaard*, 90 Wn.2d at 739.

Wixon must establish a reasonably substantial possibility that the trial court's instruction improperly influenced the jury's verdict. *Ford*, 171 Wn.2d at 188-89. Although defense counsel requested a mistrial, he provided no support on the record for his motion. The trial court did not require the jury to deliberate for a certain length of additional time. The court merely instructed the jury to continue deliberating.

Contrary to Wixon's argument, the trial court did not instruct the jury that they were required to reach a verdict. Rather the trial court instructed the jury to continue deliberating "in an effort to reach a unanimous verdict." VRP at 539. Wixon merely speculates that the trial court's instruction to continue deliberating in an effort to reach a unanimous verdict coerced the jury's verdict. Wixon has not met his burden of showing the trial court's instruction improperly influenced the jury's verdict.

C. CONCLUSION

Because Wixon cannot establish that the trial court's decision to have the jury continue its deliberations after four hours of deliberating improperly influenced its verdict, his claim that his due process rights were violated fails, and thus, we hold that the trial court did not violate Wixon's right to a fair and impartial jury.

IIv. VIOLATION OF CrR 6.15(f)(2)

Wixon argues that the trial court violated CrR 6.15(f)(2) by asking the jury to continue deliberating in an effort to reach a unanimous verdict after the jury foreperson announced that the jury was deadlocked. We disagree.

CrR 6.15(f)(2) provides:

> After jury deliberations have begun, the court shall not instruct the jury in such a way as to suggest the need for agreement, the consequences of no agreement, or the length of time a jury will be required to deliberate.

"The purpose of this rule is to prevent judicial interference in the deliberative process." *Boogaard*, 90 Wn.2d at 736.

As discussed above, the trial court did not improperly instruct the jury to reach a unanimous verdict. The trial court's instruction did not violate CrR 6.15(f)(2) because it does not suggest the need for agreement. Rather, the trial court merely instructed the jury to keep deliberating to try to reach a verdict. The trial court did not instruct the jury that they were required to reach a verdict, nor did the court state any consequences resulting from the lack of a unanimous verdict, nor did the court tell the jury how long they will be required to deliberate.

Because the trial court did not instruct the jury in such a way that suggested the need for agreement, we hold that the court did not violate CrR 6.15(f)(2).

## CONCLUSION

We hold that the trial court did not violate Wixon's right to a fair and impartial jury and CrR6.15(f)(2). We affirm Wixon's convictions.

No. 54395-8-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

, C.J.
LEE, C.J.

MAXA, J.