[No. 22993.   Department Two.   August 22, 1931.]

NICK BEGLINGER, *Respondent and Cross-appellant*, v. JOHN C. SHIELD *et al., Appellants.*[1]

[1]Reported in 2 P. (2d) 681.

148.

*Reynolds, Ballinger, Hutson & Boldt,* for appellants Shield and United Pacific Casualty Insurance Company.

*Kahin & Carmody,* for appellants Currey.

*Wright & Wright* and *Rummens & Griffin,* for respondent and cross-appellant.

BEELER, J.—We shall refer to Nick Beglinger as the "plaintiff," to the United Pacific Casualty Insurance Company as the "Insurance Company," to the Shield Transportation Company as the "Stage Company," and to the Union Transfer Company as the "Truck Company."

On August 9, 1929, the plaintiff became a passenger for hire on a bus or stage operated by the Stage Company, intending to travel from Seattle to Auburn. The stage was running in a southerly direction over a macadamized arterial highway known as the "Valley highway." The Truck Company was running its truck in an easterly direction on the Kent-Des Moines highway, which is also paved but is not an arterial highway. These two highways intersect at approximately a right angle. A collision between these two vehicles occurred within the intersection, the truck driving headlong into the stage, striking it at about the middle, with the result that the plaintiff was seriously injured. He brought this action against the Stage Company, the Truck Company and the Insurance Company to recover damages. The jury found for the plaintiff, and late at night returned the following verdict:

"We, the jury in the above entitled cause, do find in favor of the plaintiff against the defendants, John C. Shield, Jacob G. Shield, co-partners doing business under the firm name and style of Shield Transportation Co.; and against the defendant James C. Currey,

in the sum of $5,000, and against the United Pacific Casualty Insurance Company, a corporation, in the sum of $5,000.''

While the jury were still in the box, a colloquy took place between various of its members and the trial judge. What occurred is set forth in an affidavit of the trial judge, as follows:

''That the court upon the jury taking their places in the jury box inquired of the foreman of the jury, A. C. Carrigan, if they had arrived at a verdict; he advised the court that they had and the same was passed to the court, and the same read and the jury was polled and unanimously advised the court that said verdict was the verdict of each of said jurors separately as well as the verdict of the jury.

''That the court advised the jury that seven of their number had completed their jury service and were permanently excused, and advised the remaining five they would report back to the department of the presiding judge on Monday morning, November 3, 1930, for further jury service.

''When this announcement was made, and before any member of the jury left the jury box, and while each of said jurors remained in said jury box, Bertram Noelson, one of the jurors, arose and said to the court as follows: 'Your honor will understand that the jury in this case found in favor of the plaintiff in the sum of $10,000, and that is the unanimous verdict of the jury in this case.' The court advised the jury that he thought the information from the jury in that regard came too late, since the jury had been polled and all answered that the verdict as rendered was their separate verdict and the verdict of the jury. That said jurors advised the court this was true, that is, they thought the verdict which they rendered was a verdict in favor of the plaintiff in the sum of $10,000 as against the truck owner and against the stage owner, and a verdict of $5,000 as against the United Pacific Casualty Insurance Company, a corporation.

''That each and every one of said jurors from the

jury box, and before leaving the same, advised the court it was the unanimous verdict of the jury that the plaintiff's damages had been agreed upon by them as a body in the sum of $10,000 and that they thought in the verdict which had been submitted to them, and the verdict rendered in this case by the use of the word 'and' immediately preceding the name of the United Pacific Casualty Insurance Company, a corporation, carried with it the inference that the amount awarded against the truck company and the stage company, together with the amount awarded against the United Pacific Casualty Insurance Company, a corporation, would be added together, resulting in a total judgment or award in favor of the plaintiff in the sum of $10,000, and in rendering the verdict as they did they thought they were following directly the instructions of the court in that regard, and in accordance with the particular form of the verdict as supplied by the court.

''That at said time there was considerable discussion among the jurors and the court, and the court stated that it was powerless to send the jury back to the jury room for the purpose of correcting its verdict.

''That all of the jurors jointly and severally advised the court that if the verdict as read by the court was to be by the court construed to mean a verdict only in favor of the plaintiff in the sum of $5,000 that said construction was absolutely erroneous and contrary to the findings made by the jury and the assessment of damages made by them, and to that extent, would operate as an injustice to the plaintiff.

''That when affiant entered the court room of said department, as aforesaid, the aforesaid jury was still in the jury room and under charge of the bailiff, and had not yet assembled in the jury box; that when affiant arrived the court ordered the bailiff to assemble the jury in the jury box and the bailiff unlocked the door in which the jury were assembled and assembled them in the jury box; that during all of the period of time involved and referred to, there was in the court room, from the time the jury left the jury room, only the presiding judge, the Honorable Malcolm Douglas, his two bailiffs, and the jury and affiant; that at no time did

the jury, until finally discharged by the court after the colloquy above mentioned, have an opportunity to mingle with the public or any person or persons at all, in that the court room itself contained no persons at any time from the arrival of affiant until after the jury had left the jury box except those hereinbefore specified, and said jury did not leave the jury box and did not separate after its retirement to deliberate upon its verdict until after all of the above had taken place as herein stated.''

The plaintiff seasonably filed two motions. In the first motion, he sought to have the court enter an order correcting the verdict so as to have it state the true verdict of the jury, or, in the alternative, to reassemble the jury for that purpose. This motion was denied. In the alternative, and only in the event the court should refuse to correct the verdict, the plaintiff, in his second motion, moved for a new trial. This motion was granted on the sole ground of irregularity in the proceedings of the court and jury, and that the verdict received and filed did not truly state the verdict of the jury.

The Insurance Company and the Stage Company moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial. This motion in its entirety was denied.

The Truck Company has appealed from the order granting to the plaintiff a new trial. The plaintiff has cross-appealed from that portion of the order refusing to correct the verdict. The Stage Company and the Insurance Company have cross-appealed from that portion of the order denying their motions for judgment n.o.v., and for a new trial.

The Truck Company filed a motion in this court to dismiss the cross-appeals of the plaintiff and of the Insurance Company and Stage Company. But in view

of the state of the record, we shall not consider or comment on this motion.

We shall first consider the plaintiff's cross-appeal. It is manifest from the colloquy that occurred between the trial judge and members of the jury, as shown by the affidavit of the trial judge, that the jury intended to return a verdict in favor of the plaintiff in the sum of $10,000 as against all of the defendants except the Insurance Company, its liability being limited to the sum of $5,000; whereas the verdict as rendered, in legal effect, is a finding against all of the defendants for the sum of $5,000.

Up to the time of the colloquy, the jury had not been discharged, nor had the verdict been received or filed. The verdict had merely been read. The trial judge apparently was of the opinion that he was powerless to have the jury correct the verdict. In this he was in error. Until a verdict is received and filed for record, the trial court may send the jury back to consider and clarify or correct mistakes appearing on the face of the verdict.

"As long as the jurors, under the direction of the court, exercised according to law, have the case in their hands, it is within their province to change or modify the verdict." *Bino v. Veenhuizen,* 141 Wash. 18, 250 Pac. 450, 49 A. L. R. 1297.

See, also, *Gosslee v. Seattle,* 132 Wash. 1, 231 Pac. 4.

But after a verdict has been received and recorded and the jury discharged, it can no longer function as a jury.

"The power of a jury over their verdict, unlike that of the court, ceases on their discharge. With their assent to the verdict as recorded their functions with respect to the case cease and the trial is closed, and after the verdict is received and the jury discharged the control of the jury is at an end, and they cannot be recalled to alter or amend it." 27 R. C. L. 895.

After a jury has been discharged, the authority of the court to amend or correct its verdict is limited strictly to matters of form or clerical error.

"But, like amendments made before the discharge of the jury, the power of the court is limited to the correction of matters of form, and no material alteration in the substance of the verdict can be made after the imperfect verdict has been recorded and the jury have separated." 27 R. C. L. 895.

Any other rule would permit the trial judge to substitute his own judgment in the place of that of the jury upon matters of substance. These views find support in the following cases: *Yonker v. Grimm*, 101 W. Va. 711, 133 S. E. 695; *Powell v. Bierman*, 22 S. W. (2d) (Mo. App.) 854; *Abraham v. Superior Court*, 50 R. I. 207, 146 Atl. 617, 66 A. L. R. 533; *Boyer v. Maloney*, 27 Ohio App. 52, 160 N. E. 740; *Read Phosphate Co. v. Wells*, 18 Ga. App. 656, 90 S. E. 358; *Youtsey v. Darlington*, 233 Ky. 112, 25 S. W. (2d) 44; *Capital Traction Co. v. Lyon*, 24 Fed. (2d) 262.

In the case of *Yonker v. Grimm, supra,* the rule is stated as follows:

"A verdict in a civil case which is defective or erroneous in a mere matter of form, not affecting the merits or the rights of the parties, may be amended by the court to conform it to the issue and give effect to what the jury unmistakably find. . . . This, as may be observed, goes to a matter of mere form. The judge cannot, under the guise of amending the verdict, invade the province of the jury or substitute his verdict for theirs. All the cases in which such amendments have been upheld are where the omission of words which are merely technical have been supplied by the court."

In *Powell v. Bierman, supra,* it was said:

"It has been held repeatedly that the right of a court to amend the verdict after the discharge of the jury is limited to matters of form, or clerical errors clearly

154

made manifest by the record, but never to matters of substance, required to be passed on by the jury, which in their nature are essential to the determination of the case and subject to dispute. If, therefore, any correction of a verdict is to be made, except as to matters of form, it must be done by the jury before their discharge.''

In *Abraham v. Superior Court, supra,* the rule is thus stated:

''After a jury has been discharged their connection with the particular case ceases and thereafter that case is beyond their control. The jurors cannot be again brought together, without the consent of the parties, either to find another verdict or to amend the one already found.''

As to the cross-appeals of the Insurance Company and the Stage Company, it is sufficient to say that the order granting to the plaintiff a new trial was general in its terms. The effect of such an order is to open up the case as to all issues and as to all of the parties.

''The order granting the new trial was general in its terms. The effect of such an order, generally speaking, is to open up the entire case as to all the parties regardless of the fact that some of them may not have moved for a new trial.'' *Murphy v. Bridge,* 43 Cal. App. 87, 184 Pac. 498.

See, also, *Bishop v. Superior Court,* 59 Cal. App. 46, 209 Pac. 1012; *Bourre v. Texas Co.,* 51 R. I. 234, 154 Atl. 86.

There was sufficient evidence to take the case to the jury on the question of the negligence of the Stage Company; hence the trial court properly denied the motion for judgment n. o. v. as to both the Stage Company and the Insurance Company.

It is undisputed that the verdict returned and filed, because of a mistake or misapprehension, did not express the real finding of the jury. Inasmuch as the

trial judge, before the discharge of the jury, had failed to have the jury correct or amend their verdict, the granting of a new trial was necessary and proper.

The order appealed from is affirmed.

TOLMAN, C. J., MILLARD, BEALS, and FULLERTON, JJ., concur.

