# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72913-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| DAREN M. MORALES, | ) | PUBLISHED |
| | ) | |
| Appellant. | ) | FILED: September 26, 2016 |
| | ) | |

Cox, J. — The constitutional right to jury trial requires that a sentence must be authorized by a jury's verdict.[1] Here, the jury's verdict stated that Daren M. Morales was guilty of the crime of "Child Molestation in the Second Degree."[2] The State did not charge Morales with this crime. The trial court did not instruct the jury on it. And the parties' closing arguments did not mention this crime.

The trial court discharged the jury after polling its members on the verdict. Over a week after the court discharged the jury, Morales moved for a new trial. He based the motion on the difference between the jury verdict, on the one hand, and the jury instructions and the parties' final arguments, on the other. The court

---

[1] State v. Williams-Walker, 167 Wn.2d 889, 896, 225 P.3d 913 (2010).

[2] Clerk's Papers at 131.

denied the motion and corrected the jury verdict to reflect the actual charge on which the jury was instructed: Child Molestation in the First Degree.[3] The court sentenced Morales based on the corrected verdict.[4]

Because the trial judge discharged the jury and the jury members dispersed before discovery and correction of the error in the verdict, the court had no authority to make a material change to the jury verdict. Accordingly, the sentence based on the corrected verdict cannot stand. We reverse and remand with instructions.

In July 2014, the State charged Morales with two crimes, both of which involved G.C., his niece. Her date of birth is July 8, 2001.

Count 1 of the Amended Information charged Morales with Rape of a Child in the First Degree for a charging period between December 1, 2012 and April 30, 2013.[5] Count 2 of the Amended Information charged him with Child Molestation in the First Degree for the same charging period as in Count 1.[6]

Before trial, the State moved in limine to exclude or limit certain expert testimony that Morales intended to introduce at trial. The evidence dealt with the expert's evaluation of a detective's interview of G.C., the complaining witness. The trial court ruled that the expert's testimony would be allowed, but prohibited the expert from testifying about the evaluation of this witness's credibility.

---

[3] Id. at 165-166.

[4] Id. at 150.

[5] Id. at 6.

[6] Id.

At trial, G.C. testified that Morales touched her and described where and how he did so. Other witnesses also testified at trial.

The parties proposed instructions to the court from which it decided which instructions it would give to the jury.[7] It is undisputed that the trial court did not give an instruction on Child Molestation in the Second Degree. To the contrary, the only molestation instruction that the court gave was Instruction 13, which was for Child Molestation in the First Degree.[8]

The trial court also gave its Instruction 12, which was for Rape of a Child in the First Degree.[9]

The parties' made their closing arguments, in part, based on the Child Molestation in the First Degree charge and instruction. There was no reference at closing to Child Molestation in the Second Degree.

Nevertheless, Verdict Form B, the verdict form for Count 2, stated that the crime before the jury was "Child Molestation in the Second Degree."[10] After the jury deliberated, the presiding juror completed that form on the jury's behalf by filling in the word "guilty."

The jury acquitted Morales of Rape of a Child in the First Degree.

---

[7] See CrR 6.15.

[8] Report of Proceedings (November 21, 2014) at 13.

[9] Id. at 12.

[10] Clerk's Papers at 131.

The court received the jury's verdicts on November 24, 2014. The court then polled the jury. Thereafter, the court discharged the jury and its members dispersed.

On December 5, 2014, Morales moved for a new trial. He did so because the guilty jury verdict for Child Molestation in the First Degree was contrary to law and the evidence. He relied on the difference between the jury verdict, on the one hand, and the jury instructions and the parties' final arguments, on the other.

On December 23, 2014, the trial court denied the motion and corrected the verdict form to read "Child Molestation in the First Degree."[11] On that same date, it entered its judgment and sentence based on the corrected jury verdict.

Morales appeals.

## JURY VERDICT

Morales argues that the trial court violated his right to jury trial by correcting the jury verdict form and entering judgment on that corrected verdict. We must agree.

We review for abuse of discretion a trial court's decision to deny a motion for a new trial.[12]

"[U]nder both the Sixth Amendment to the United States Constitution and article I, sections 21 and 22 of the Washington Constitution, the jury trial right requires that a sentence be authorized by the jury's verdict."[13]

---

[11] Id. at 165-66; Report of Proceedings (December 23, 2014) at 110.

[12] State v. Burke, 163 Wn.2d 204, 210, 181 P.3d 1 (2008).

[13] Williams-Walker, 167 Wn.2d at 896.

4

The jury trial right may not be impaired by either legislative or judicial action.[14]

State v. Williams-Walker[15] is instructive. There, the supreme court had before it consolidated cases in which firearm enhancement sentences were imposed on the defendants.[16] But the juries were instructed and were given special verdict forms that asked whether the defendants were armed with deadly weapons.[17] The court framed the issues as whether the sentences were erroneous and, if so, whether, under the state constitution, the error was subject to harmless error analysis.[18]

The court held that under both the state and federal constitutions "the jury trial right requires that a sentence be authorized by the jury's verdict."[19] In applying that principle to the cases before it, the court stated:

> Where a jury finds by special verdict that a defendant used a "deadly weapon" in committing the crime (even if that weapon was a firearm), this finding signals the trial judge that only a two-year "deadly weapon" enhancement is authorized, not the more severe five-year firearm enhancement. When the jury makes a finding on the lesser enhancement, the sentencing judge is bound by the jury's determination.
>
> . . . [A] sentencing court violates a defendant's right to a jury trial if it imposes a firearm enhancement without a jury authorizing the

---

[14] Geschwind v. Flanagan, 121 Wn.2d 833, 840, 854 P.2d 1061 (1993).

[15] 167 Wn.2d 889, 225 P.3d 913 (2010).

[16] Id. at 892.

[17] Id.

[18] Id.

[19] Id. at 896.

5

enhancement by explicitly finding that, beyond a reasonable doubt, the defendant committed the offense while so armed . . . .

In each of the three cases here, the court submitted to the jury the special verdict form for a deadly weapon enhancement, not the form for a firearm enhancement, which was originally alleged, and the jury returned answers to those deadly weapon special verdict forms. In each case, the jury thus authorized only a deadly weapon enhancement, not the more severe firearm enhancement.[20]

Here, the trial court submitted to the jury Verdict Form B. It specified the alleged crime as Child Molestation in the *Second* Degree. There was no verdict form for Child Molestation in the *First* Degree, which was the crime alleged in the amended information and on which the jury was instructed. The jury returned its guilty verdict on Child Molestation in the *Second* Degree, using the verdict form that the court supplied. This "signal[ed]" to the trial court that the jury authorized only this latter crime as a basis for sentencing.[21]

The State argues that Morales's reliance on Williams-Walker is misplaced because CrR 7.8 was not discussed in that case. That is the court rule on which the trial court relied to correct the jury verdict. This argument is not convincing.

First, the fact that the supreme court did not discuss CrR 7.8 in Williams-Walker is not a persuasive distinguishing factor. There, the court held that the jury trial right included the right to be sentenced only on a basis authorized by a jury's verdict. It did so on facts that are not materially distinguishable from those here.

---

[20] Id. at 898 (citation omitted).

[21] Id.

There, the jury verdict forms stated the "deadly weapon" enhancement, not the more serious "firearm" enhancement. Trial courts in some of the cases sentenced on the basis of the latter, not the former, enhancement. The court held that was error.

Here, the jury verdict stated Child Molestation in the Second Degree, not the more serious Child Molestation in the First Degree. The trial court sentenced on the basis of the more serious crime, not the one in the jury verdict.

The underlying principle is the same: the jury verdict only authorized a sentence based on that verdict. The court based the sentence on a crime not authorized by the jury verdict.

Second, we deal later in this opinion with the question whether CrR 7.8 is a proper remedy to correct an arguably erroneous jury verdict. That discussion deals more fully with the State's argument.

Given that there was an arguably erroneous jury verdict, we must decide whether the court had the authority to change it. Two supreme court cases provide guidance.

In State v. Badda,[22] there was a mistake in the jury verdict that was immediately discovered after the clerk read the verdict and before the court polled the jury.[23] The supreme court said:

> Up to the time of the colloquy, the jury had not been discharged, nor had the verdict been received or filed. The verdict had merely been read. The trial judge apparently was of the opinion that he was powerless to have the jury correct the verdict.

---

[22] 68 Wn.2d 50, 411 P.2d 411 (1966).

[23] Id. at 59-60.

7

In this he was in error. Until a verdict is received and filed for record, the trial court may send the jury back to consider and clarify or correct mistakes appearing on the face of the verdict.

"As long as the jurors, under the direction of the court, exercised according to law, have the case in their hands, it is within their province to change or modify the verdict." [24]

We read this to mean that a jury has the authority to correct its verdict until it is discharged. The jury may do so to "consider and clarify or correct mistakes appearing on the face of the verdict."[25]

Once a jury is discharged, a court may correct an erroneous verdict only under limited circumstances. What limited circumstances qualify is explained by another supreme court case, cited in Badda. That case is Beglinger v. Shield.[26]

In that case, the supreme court stated:

After a jury has been discharged, the authority of the court to amend or correct its verdict is limited strictly to matters of form or clerical error.

"But, like amendments made before the discharge of the jury, the power of the court is limited to the correction of matters of form, and *no material alteration in the substance of the verdict can be made after the imperfect verdict has been recorded and the jury have separated*." [27]

These rules have not changed over time. After discharging a jury, the trial court "may correct a verdict form only to conform to an actual jury finding if the

---

[24] Id. at 61 (quoting Bino v. Veenhuizen, 141 Wash. 18, 21-22, 250 P. 450 (1926)).

[25] Id.

[26] 164 Wash. 147, 2 P.2d 681 (1931).

[27] Id. at 153 (emphasis added) (quoting 27 R. C. L. 895).

verdict is 'defective or erroneous in a mere matter of form, not affecting the merits or rights of the parties.'"[28] But the trial court "'has no power to supply substantial omissions,' particularly where the portion of the verdict at issue relates to controverted issues of fact in the case."[29]

Based on these authorities, we conclude that the material change to the jury verdict in this case was not within the trial court's authority. The jury verdict stated that Morales was guilty of Child Molestation in the Second Degree. The court polled the jury and accepted its verdict. The court then discharged the jury and its members dispersed.

The trial court's authority was then strictly limited to correcting matters of form or clerical error. But the substantive change in the verdict in this case is outside the scope of permissible change under the case law.

Calling this change a "clerical error" correction does not conform with the case law. For example, it was, arguably, a clerical error when the trial court gave to the jury the incorrectly worded verdict form. The relevant molestation charge and instructions make clear that the court did not intend to give the jury a verdict form for Child Molestation in the Second Degree.

But we do not necessarily conclude that the jury's completion of the incorrectly worded verdict form is also "clerical error." Perhaps the most compelling narrative is that the jury simply overlooked the inconsistency between

---

[28] Marvik v. Winkelman, 126 Wn. App. 655, 660, 109 P.3d 47 (2005) (quoting City Bond & Share, Inc. v. Klement, 165 Wash. 408, 410, 5 P.2d 523 (1931)).

[29] Id. (quoting City Bond & Share, Inc., 165 Wash. at 411).

the wording in the verdict form, the instructions, and the parties' arguments. But we simply cannot know whether this is the case.

Moreover, even if we were entitled to speculate on the jury's thought processes during its deliberations, changing the verdict form adversely affected Morales's substantial rights. The change resulted in his sentencing for a more serious crime.

Most of the parties' briefing, below and on appeal, is directed to the use or misuse of CrR 7.8 as a remedy to correct the allegedly erroneous jury verdict. Morales argues that this rule is not a proper basis for the court to change the jury verdict. The State argues that it is. For the reasons that follow, we conclude that this court rule did not provide the trial court with authority to make the material change to the jury verdict in this case.

CrR 7.8(a) provides relief from a judgment due to "[c]lerical mistakes . . . and errors therein arising from oversight or omission." The court may correct these errors "at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."[30]

Clerical errors are those that do not embody the trial court's intention as expressed in the trial record.[31] These errors allow for amended judgments to

---

[30] CrR 7.8(a).

[31] Presidential Estates Apt. Assocs. v. Barrett, 129 Wn.2d 320, 326, 917 P.2d 100 (1996).

correct language that did not correctly convey the court's intention or "supply language that was inadvertently omitted from the original judgment."[32]

Errors that are not clerical are characterized as judicial errors, and trial courts may not amend a judgment under CrR 7.8 for judicial errors.[33]

Here, the trial court denied Morales's motion for a new trial based on CrR 7.8. The essence of its ruling was that the jury was only instructed on Child Molestation in the First Degree, the only molestation crime charged. The court also concluded that the only crime on which the jury could have convicted was Child Molestation in the First Degree. Only this charge was consistent with the instructions, the evidence, and the closing arguments. Accordingly, the court corrected the jury verdict and entered its judgment and sentence on the corrected jury verdict.

Two divisions of this court have reached different conclusions whether CrR 7.8 may properly be used to correct a jury verdict.

In State v. Imhoff, this division permitted the use of the rule to correct a jury verdict.[34] There, the State charged Robert Imhoff with attempted possession of marijuana with intent to manufacture or deliver.[35] The verdict form given to the jury lacked the word "attempted."[36]

---

[32] Id.

[33] State v. Davis, 160 Wn. App. 471, 478, 248 P.3d 121 (2011).

[34] 78 Wn. App. 349, 352, 898 P.2d 852 (1995).

[35] Id. at 350.

[36] Id.

After the jury entered its verdict against him, Imhoff noticed that the verdict form lacked the word "attempted."[37] The trial court denied Imhoff's motion to dismiss or to vacate the verdict and entered judgment on the attempt crime actually charged.[38]

He appealed and argued that the jury verdict convicting him of possession with intent violated his constitutional right to be informed of the charge against him and to be tried and convicted only for the offense charged.[39] This division affirmed, stating "[t]he miswording of the verdict form did not cause Imhoff to be unaware of the charge he was facing, nor did it misinstruct the jury as to what charge he was being tried for."[40]

In the analysis, this division focused on the jury instructions and the State's closing argument. The State's closing argument contained "attempt language."[41] This division stated that it was clear that the jury regarded the omission of the word "'attempted' from the verdict as an oversight."[42] That is because other instructions contained the word "attempt."[43] Thus, "[b]ased on the instructions, the only crime the jury could have possibly convicted Imhoff of was

---

[37] Id.

[38] Id.

[39] Id.

[40] Id. at 351.

[41] Id. at 352.

[42] Id. at 350.

[43] Id. at 351.

attempt to possess a controlled substance with intent to manufacture or deliver."[44] Lastly, this court stated, "[a]s there is nothing in the record to indicate that the misworded verdict form prejudiced Imhoff, we hold the trial court acted within the bounds of its discretion in correcting a clerical mistake under CrR 7.8(a)."[45]

In contrast, Division Two decided State v. Rooth.[46] That division of this court determined that the erroneous jury instructions were not clerical errors.[47]

There, the State charged Lorne Rooth with unlawful possession of a 9 mm handgun in Count I and unlawful possession of a .22 caliber handgun in Count II.[48] In closing argument and in the jury instructions, the handguns were switched.[49]

The Count I verdict form stated: "'We, the jury, find the defendant [n]ot [g]uilty of the crime of Unlawful Possession of a Firearm in the First Degree *as charged in Count One* [the 9 mm handgun]'" in the information.[50] The Count II verdict form stated: "'We, the jury, find the defendant [g]uilty of the crime of

---

[44] Id.

[45] Id. at 352.

[46] 129 Wn. App. 761, 121 P.3d 755 (2005).

[47] Id. at 771.

[48] Id. at 766.

[49] Id. at 769.

[50] Id. at 769-70 (some alterations in original).

13

Unlawful Possession of a Firearm in the First Degree *as charged in Count Two* [the .22 caliber handgun]'" in the information.[51] Thus, the verdicts did not correspond with the erroneous closing arguments or the erroneous instructions that incorrectly stated the elements in the information.[52] The trial court sentenced Rooth according to the jury's verdicts.[53]

On appeal, Division Two concluded that these errors were judicial errors, not clerical errors.[54] In its analysis, it stated

> Nothing in the record indicates that the trial court intended to sentence in accord with the information but, through some clerical error, it wrongfully sentenced Rooth. Perhaps if the verdict forms had identified the firearm, . . . there would be a basis to address clerical error. But that is not evident from the record.[55]

Importantly, to support its argument, the State cited a federal case where the jurors submitted affidavits stating they had been confused about the count numbering.[56] More specifically, the State argued that the jury intended to convict on a different count.[57] Thus, the State argued that the court should go behind the verdicts. Division Two declined the invitation, characterizing this as impeachment of the jury verdict:

---

[51] Id. at 770 (some alterations in original).

[52] Id.

[53] Id. at 771.

[54] Id.

[55] Id.

[56] Id.

[57] Id.

Juror motives, the effect the evidence had on the jurors, the weight given to the evidence by particular jurors, and the jurors' intentions and beliefs are all factors inhering in the jury's thought processes in arriving at its verdict and, therefore, inhere in the verdict itself. And any averment that is offered concerning these mental processes is inadmissible to impeach the verdict. Therefore, any evidence that a juror misunderstood or failed to follow the court's instructions inheres in the verdict and may not be considered.[58]

Neither Imhoff nor Rooth dealt with the constitutional right to a jury trial addressed in the later supreme court case, Williams-Walker, that we discussed earlier in this opinion. The jury trial right "requires that a sentence be authorized by the jury's verdict."[59] That requirement is not met here. The jury convicted Morales of Child Molestation in the Second Degree. The trial court sentenced him for Child Molestation in the First Degree, a different and more serious crime, based on a corrected verdict.

Recognizing that we are faced with an arguably erroneous verdict, the question is whether the trial court had the authority to correct the jury verdict under the circumstances of this case. We must conclude that it did not.

The error was discovered after the court discharged the jury and its members dispersed. Long-standing case law makes clear that a court's authority to change a jury verdict is extremely limited after the jury is discharged. And such change does not extend to matters that either impeach a jury's verdict or adversely impact an accused.

---

[58] Id. at 771-72 (citations omitted).

[59] Williams-Walker, 167 Wn.2d at 896.

For these reasons, we conclude that changing the jury verdict in this case was not authorized. Accordingly, the judgment and sentence on the changed verdict was not authorized. We must reverse the judgment and sentence based on the corrected verdict.

## IN LIMINE RULING

Morales also argues that the trial court abused its discretion in limiting his expert's testimony, violating his right to present a defense. We hold that the court properly exercised its discretion by excluding a portion of this testimony.

Criminal defendants have a constitutional right to present a defense under the Sixth Amendment of the United States Constitution and article I, section 22 of Washington's constitution.[60] But "'[t]he accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'"[61]

ER 702 governs admissibility of expert testimony. Expert testimony is admissible if the expert is qualified and relies on generally accepted theories in the scientific community.[62] The expert testimony must be helpful to the trier of

---

[60] State v. Wade, 186 Wn. App. 749, 763, 346 P.3d 838, review denied, 184 Wn.2d 1004 (2015).

[61] State v. Lizarraga, 191 Wn. App. 530, 553, 364 P.3d 810 (2015) (some alteration in original) (quoting Taylor v. Illinois, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988)), review denied, 185 Wn.2d 1022 (2016).

[62] Johnston-Forbes v. Matsunaga, 181 Wn.2d 346, 352, 333 P.3d 388 (2014).

fact.[63] "Expert testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson and is not misleading."[64]

We review for abuse of discretion a trial court's decision on expert witness testimony.[65] A trial court abuses its discretion if its "decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"[66]

In State v. Thomas, we concluded that the trial court did not abuse its discretion in excluding expert testimony.[67] In that case, Sara Thomas sought to have Dr. Robin LaDue testify to support her diminished capacity defense to assault.[68] Dr. LaDue concluded that it was "possible" that Thomas blacked out at the time of the alleged assault.[69] The trial court excluded this conclusion, stating that it would not assist the jury.[70]

We agreed that the testimony was not helpful to the jury, stating, "[the medical expert] did not express the opinion that Thomas suffers from a mental disorder that impairs her ability to form the intent necessary to commit first

---

[63] Id.; ER 702.

[64] State v. Groth, 163 Wn. App. 548, 564, 261 P.3d 183 (2011).

[65] Johnston-Forbes, 181 Wn.2d at 352.

[66] State v. Gentry, 183 Wn.2d 749, 761, 356 P.3d 714 (2015) (internal quotation marks omitted) (quoting Wilson v. Horsley, 137 Wn.2d 500, 505, 974 P.2d 316 (1999)).

[67] 123 Wn. App. 771, 781, 98 P.3d 1258 (2004).

[68] Id. at 775, 777.

[69] Id. at 777.

[70] Id. at 778.

17

degree assault."[71] We further stated "Nor did [the expert] express an opinion as to whether, if Thomas were in a blackout at the time of the crime, the blackout affected Thomas's ability to form the intent to commit assault in the first degree."[72] Thus, we concluded that the trial court did not violate Thomas's right to present a defense.[73]

Here, before trial, the State moved in limine to exclude or limit Dr. John Yuille's testimony. Dr. Yuille testified at the ER 702 hearing about his evaluation of the interview by a detective of G.C., the alleged victim. In his evaluation, he concluded that it was "not possible to assess the credibility of the child's allegation based upon such a poor quality interview. Credibility assessment requires the child's version of the event and [G.C.] was never given an opportunity to provide [G.C.'s] version."[74]

Overall, the trial court allowed Dr. Yuille's testimony about his evaluation of G.C.'s interview with a detective but prohibited him from testifying to his credibility evaluation. The court focused on Dr. Yuille's inability to analyze G.C.'s interview and apply certain criteria, and thus, his inability to reach a conclusion.

In relevant part, the trial court stated:

> I do believe it will be of limited assistance to the trier of fact. . . . [H]e may discuss and testify to his evaluation of the interview of GC and his conclusion about [the detective's] interview technique. He

---

[71] Id. at 781.

[72] Id. at 780.

[73] Id. at 781.

[74] Clerk's Papers at 55.

will not be allowed to testify about his conclusion [that] [i]t is not possible to assess the credibility of a child's allegation based upon such a poor-quality interview. He was not able to complete the testing that he himself required . . . as he indicated, because of the poor-quality interview. A nonconclusion is not helpful to the trier of fact.[75]

During trial, Dr. Yuille testified about his method for assessing child interviews and his assessment of G.C.'s interview with a detective. Dr. Yuille concluded that the interview "was a poor-quality interview of a child" and stated his reasoning.

This record shows that Morales received a sufficient opportunity to present his defense. The trial court extensively considered the ER 702 factors and allowed a significant amount of testimony from Dr. Yuille. Thus, the trial court's decision was not "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"[76]

## SUFFICIENCY OF EVIDENCE

Morales finally argues that insufficient evidence supports the guilty jury verdict for Child Molestation in the Second Degree. We hold that the evidence was sufficient to support the verdict of the jury.

In relevant part, RCW 9A.44.086(1) states that a person is guilty of second degree child molestation "when the person has, or knowingly causes . . . sexual contact with another who is at least twelve years old," but less than 14 years old,

---

[75] Report of Proceedings (November 5, 2014) at 169-70.

[76] Gentry, 183 Wn.2d at 761 (internal quotation marks omitted) (quoting Horsley, 137 Wn.2d at 505).

19

and not married to the perpetrator. G.C.'s birth date is July 8, 2001, which means she was 11 years old during the charging period.

In State v. Goss, the supreme court recently addressed the elements of the crime of second degree child molestation, the crime reflected in the jury verdict in this case.[77] An issue was whether the "at least 12 years old" language of the statute was an essential element of the crime.[78] The supreme court concluded that the "'who is at least twelve years old' clause in the second degree child molestation statute does not create an essential element of the crime. . . . The lower age limit (unlike the highest) is not a fact 'whose specification is necessary to establish the very illegality of the behavior charged.'"[79]

Here, Morales makes the same argument that the court rejected in Goss. We, likewise, reject this argument. The evidence was sufficient to support the jury verdict in this case.

Judgment on that jury verdict is proper. We direct the trial court to enter judgment on that verdict following remand.

---

[77] No. 92274-8, slip op. at 7 (Wash. August 18, 2016), http://www.courts.wa.gov/opinions/pdf/922748.pdf.

[78] Id. at 5.

[79] Id. at 11 (citation omitted) (quoting State v. Zillyette, 178 Wn.2d 153, 158, 307 P.3d 712 (2013)).

We reverse the judgment and sentence and remand with instructions to enter judgment on the jury verdict of guilty of second degree child molestation.

_____
Cox, J.

WE CONCUR:

_____  _____
Dwyer, J.        Becker, J.