# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  57976-6-II |
| Respondent, | |
| v. | |
| JASON STEWART FERGUSON, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Jason S. Ferguson appeals his judgment and sentence following a *Blake*[1] resentencing hearing.  Ferguson argues that (1) the resentencing court abused its discretion when it failed to exercise discretion during the resentencing hearing and (2) the resentencing court exceeded its authority when it later amended Ferguson's judgment and sentence.  Because the record shows that the resentencing court exercised discretion, we hold it did not abuse its discretion.  Additionally, because the resentencing court modified a judgment and sentence that had not yet been entered, the resentencing court did not exceed its authority.  Accordingly, we affirm.

## FACTS

### A.    BACKGROUND

In 2004, a jury convicted Ferguson of second degree murder and first degree assault.  Both of Ferguson's convictions included a deadly weapon enhancement (DWE).

---

[1]  *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

Ferguson was 25 years old at the time of the crime. Ferguson had been at a nightclub with his then-girlfriend and another friend, Jeremy Seley. *State v. Ferguson*, 131 Wn. App. 855, 856, 129 P.3d 856, *review denied*, 158 Wn.2d 1016 (2006). The victim, Lavell Lindsey, was also at the nightclub with several friends, including L.G. Harvey and Gregory Dalton. *Id.*

Later, as the club was closing, Ferguson, his girlfriend, and Seley got into Ferguson's vehicle. *Id.* Ferguson was the driver and Seley sat in the back seat. *Id.*

As Ferguson began to drive out of the parking lot, Seley instructed Ferguson to stop. *Id.* at 857. From the back of the car, Seley yelled at Harvey to confront him about an altercation they had in junior high. *Id.* The argument became heated, and Ferguson and his girlfriend told Seley to be quiet. *Id.* Lindsey then approached the front of Ferguson's car. *Id.* Ferguson told Lindsey to move out of the way, and Lindsey responded with an invitation to fight. *Id.* Ferguson grabbed a knife from his car's console and then exited his car. *Id.* Lindsey started punching Ferguson, and Ferguson responded with his knife. *Id.*

Ferguson stabbed Lindsey 12 times, including twice in the head and six times in the back. *Id.* at 858. Ferguson also cut Dalton in the neck when Dalton came up from behind to assist Lindsey. *Id.* at 857. Lindsey later died from his wounds and Dalton's injury would have been life-threatening had he not received medical attention. *Id.* at 858.

During the 2004 sentencing hearing, the State asked the trial court to sentence Ferguson to the high end of his sentencing range, which was 487 months. Ferguson, on the other hand, requested an exceptional downward sentence based on the fact that Lindsey was an aggressor and Ferguson had an imperfect self-defense. Specifically, Ferguson requested an exceptional downward sentence of 192 months with a 48-month DWE for a total of 250 months.

The trial court agreed with the State.[2] The trial court sentenced Ferguson to the high end of the standard range: 340 months for the second degree murder conviction (which includes 24 months for the DWE) and 147 months for the first degree assault conviction (which includes 24 months for the DWE). The sentences ran consecutively for a total of 487 months' confinement. This court affirmed Ferguson's convictions on direct appeal. *Ferguson*, 131 Wn. App. at 856.

B.      BLAKE RESENTENCING

In 2022, Ferguson filed a motion to correct his offender score and for resentencing pursuant to *Blake*. Ferguson's criminal history included two convictions for possession of a controlled substance.

1.      Mitigating Factors

Prior to the hearing, Ferguson filed a resentencing memorandum. He requested the resentencing court to impose an exceptional downward sentence of 250 months. Ferguson argued his youth and relative immaturity were mitigating factors. Specifically, Ferguson argued that because he had a traumatic childhood, his "trajectory of development was lower and slower than most from his earliest years and it has taken significant time into adulthood for increased maturation." Clerks Papers (CP) at 42.

To support his argument, he attached a comprehensive, 25-page forensic mental health evaluation conducted by a forensic psychologist. The mental health evaluation stated that Ferguson had been neglected and abandoned by his mother; was in the foster care system from the

---

[2] The trial court noted that Ferguson had an extensive violent criminal history. Ferguson's criminal history includes multiple assault convictions, including hitting a man in the face with a golf club and an instance of domestic violence where he punched his ex-girlfriend's sister in the eye for which she required several stitches.

age of five; struggled to find connections; had a history of noncompliance and delinquency; had early risk factors for violence, substance use, impulsivity, and engagement with a deviant peer group; and was in custody since 2004. The evaluation also stated that Ferguson had matured while in custody: he did not have any disciplinary infractions for over a decade, his peer groups are more prosocial, and he now sets education and work skill development goals. The evaluation concluded that Ferguson's "overall risk for future violence is estimated to be low at this time." CP at 47.

Ferguson also argued that the resentencing court should impose an exceptional downward sentence on the basis that Ferguson did not instigate the fight that led to Lindsey's death; rather, it was initiated by Lindsey. *See generally* RCW 9.94A.535(1)(a). Additionally, Ferguson submitted several letters of support from friends and family members.

In response, the State argued that an exceptional downward sentence was not appropriate. Specifically, the State asserted that Ferguson's extensive criminal history indicated "maturity beyond his stated age," and the facts leading to his 2004 convictions did not warrant leniency as Ferguson was the only armed individual during the fight. CP at 101.

2.      January 2023 Resentencing Hearing

On January 18, 2023, the resentencing court held a sentencing hearing. Ferguson and his counsel appeared remotely.

Ferguson and the State agreed on his offender score and sentencing ranges. Based on Ferguson's new offender score of 4, the standard sentencing range for his second degree murder conviction was 189 to 289 months. For Ferguson's first degree assault conviction, the new standard range was 117 to 147 months. The State requested the high end of the standard ranges, to be served consecutively, which the State stated was 336 months.

4

During the hearing, Dalton and members of Lindsey's family made statements. They each expressed a desire for Ferguson to receive the highest possible sentence.

Ferguson's counsel argued that Ferguson is a very different person today than he was in 2004. Ferguson's counsel asserted that Ferguson's difficult childhood contributed to delayed maturity as compared to his peers. Throughout Ferguson's incarceration, he took several steps towards rehabilitation. For instance, Ferguson completed his education and enrolled in various classes for which he received certificates, including classes in carpentry, blueprint reading, welding, and non-violent conflict resolution. Upon release, Ferguson would have a stable home to live in with his grandmother, and his cousin, who owns a tow truck business, would offer Ferguson employment. Finally, Ferguson's counsel contended that Ferguson did not instigate the fight that led to Lindsey's death; rather, it was an imperfect self-defense and one for which Ferguson expressed remorse. Ferguson also addressed the court and apologized to Dalton and Lindsey's family members.

The resentencing court noted that it was "coming in now after the fact" and that it had not been the original court to sentence Ferguson back in 2004. 1 Verbatim Rep. of Proc. (VRP) (Jan. 18, 2023) at 31. The resentencing court acknowledged and expressed familiarity with Ferguson's position. However, the resentencing court then stated:

> My concern is this. Coming in now at this stage and not having been the trial court judge, it's clear that the process went through a jury trial, the jury convicted and the trial court judge at that time gave a high end sentence, a very substantial sentence, with significant criminal history and significant indications of violent crime in the history. And, certainly, this crime in this case involving Mr. Lindsey and Mr. Dalton, those are particularly violent crimes. So, I think I can surmise what that Court was thinking at the time of sentencing.

Now, by virtue of the Blake decision and resentencing requirements, there's a very substantial, even best case scenario for the State, there's a very substantial reduction in the sentence to a maximum end of 336 months. So, that's about 151 months less than what was originally sentenced back post-trial.

Again, *the question before this Court is whether the defense has persuaded this Court for one or more reasons as cited in the briefing, that the Court should depart and not hold out the letter and the spirit of that high end sentencing range, which my predecessor gave back after the trial.*

It's the conclusion of this Court and after having also received impact from the victims, which is very important in this Court's view, that the case for that has not been made. And, I'm going to order the sentence to remain at the high end, albeit, with the new sentencing range, consecutive terms, constituting and calculating up to a total of 336 months.

So, that'll be the judgment of this Court. The other terms and conditions of the judgment and sentence to remain the same.

1 VRP (Jan. 18, 2023) at 32-33 (emphasis added) (underlining in original).

The State asked the resentencing court whether it considered Ferguson's argument regarding his youthfulness at the time of the crime. The resentencing court replied that it had and "ultimately did not sustain that argument." 1 VRP (Jan. 18, 2023) at 33.

Ferguson's counsel then clarified with the resentencing court whether it understood it was not bound by any prior sentencing determination and that it had discretion to impose any new sentence that was lawful. The resentencing court stated:

Absolutely. There's . . . nothing legally binding about the previous sentence at the high end. This Court understands that it has the ability and the legal authority to sentence within the standard sentencing range or above or below if the legal basis is established for that. But, I am exercising my discretion. And, in doing so, I give some presumptive weight to the high end sentencing range, which was already given. And, the fact that there's already now a massive discount from that on the basis of the changed law, and based on the totality of the circumstances, I'm just not persuaded to . . . go other than the high end sentencing range on the present scoring and guidelines.

1 VRP (Jan. 18, 2023) at 34.  The resentencing court then signed but did not enter the judgment and sentence.

       3.      February 2023 Resentencing Hearing

The parties appeared before the resentencing court again on February 10, 2023. Apparently, after Ferguson and his counsel had departed from the January hearing, the court clerk discovered a mathematical error with the judgment and sentence.  The judgment and sentence indicated the correct offender score and standard ranges for Ferguson's convictions; however, Ferguson's total term of confinement should have been 436 months instead of 336 months.[3]  The State took responsibility for the "scrivener's error in the addition of the two correct ranges" and requested the resentencing court to "correct [the] addition error."  1 VRP (Feb. 10, 2023) at 44-45.

Ferguson argued that during the January hearing, the State requested 336 months and the resentencing court agreed to 336 months; accordingly, it was not a scrivener's error.  Ferguson requested that the resentencing court not impose anything more than the 336 months and alternatively, "potentially impose less time as a result of reviewing the materials" he had previously submitted.  1 VRP (Feb. 10, 2023) at 48.  Ferguson again argued that Lindsey was an aggressor, which was a mitigating factor.

The resentencing court stated:

> I think the argument that the defense would be asking for would be to argue that there should be some kind of a windfall because of an oral ruling where there was a functional equivalent of the Court, you know, misspeaking.  Maybe the Court misidentified the victim or said a wrong name or something.  But, the . . . written version is really where the judgment and sentence come down to.

---

[3] 289 months, the high end for Ferguson's second degree murder conviction, added to 147 months, the high end for Ferguson's first degree assault conviction, equals 436 months.

. . . .

So, the 436, the Court's gonna stay with that, because that is the mathematically correct number, which represents the sum and substance of the Court's ruling therefore.

1 VRP (Feb. 10, 2023) at 49-50.

The resentencing court sentenced Ferguson to 436 months' total confinement. The resentencing court entered the judgment and sentence reflecting 436 months of total confinement.

Ferguson appeals.

ANALYSIS

Ferguson argues that the resentencing court committed reversible error when it failed to exercise its discretion during his *Blake* resentencing hearing and that the resentencing court exceeded its authority when it amended Ferguson's judgment and sentence to correct a "judicial error." Br. of Appellant at 1. We disagree.

A.    RESENTENCING

1.    Legal Principles

Trial courts generally must impose sentences within the standard sentencing range established by the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. RCW 9.94A.505(2)(a)(i); *State v. Law*, 154 Wn.2d 85, 94, 110 P.3d 717 (2005). However, the SRA allows trial courts to depart from a standard sentencing range. RCW 9.94A.535. Trial courts have the discretion to impose exceptional sentences above or below a standard sentencing range depending on various aggravating or mitigating factors. *See* RCW 9.94A.535.

Generally, a party may not appeal a standard range sentence. RCW 9.94A.585(1); *State v. Glant*, 13 Wn. App. 2d 356, 376, 465 P.3d 382, *review denied*, 196 Wn.2d 1021 (2020). "The

rationale is that a trial court that imposes a sentence within the range set by the legislature cannot abuse its discretion as to the length of the sentence as a matter of law." *Glant*, 13 Wn. App. 2d at 376.

Nevertheless, a party may challenge the underlying legal determinations from which the trial court made its decision. *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017). Further, while no party is entitled to an exceptional sentence below the standard sentencing range, "every defendant is entitled to ask the trial court to consider such a sentence and to have the alternative actually considered." *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005); *accord Glant*, 13 Wn. App. 2d at 376-77 (stating "a defendant may appeal a standard range sentence when a trial court has refused to exercise its discretion or relies on an impermissible basis for its refusal to impose an exceptional sentence downward."). A trial court abuses its discretion if it "categorically refuse[s] to impose an exceptional sentence downward or to mistakenly believe that it does not have such discretion." *Glant*, 13 Wn. App. 2d at 377.

2. Trial Court Did Not Abuse its Discretion

Ferguson argues that the resentencing court failed to exercise its discretion because it did not consider his evidence of mitigating factors—specifically, Ferguson's difficult childhood, his rehabilitation, and his immaturity when he committed the crime. We disagree.

During the January 2023 resentencing hearing, Ferguson presented evidence of his background, of his rehabilitation efforts, and that Lindsey was an aggressor who initiated the fight with Ferguson. The resentencing court acknowledged and expressed familiarity with Ferguson's arguments. However, the resentencing court stated that Ferguson did not persuade the court to depart from the high end of the standard sentencing range, noting that Ferguson's 2004 crimes

were particularly violent and that Ferguson had an extensive and violent criminal history prior to 2004. The resentencing court also relied on the statements of Dalton and Lindsey's family members.

The resentencing court expressly stated that it took Ferguson's youth into account and "did not sustain that argument." 1 VRP (Jan. 18, 2023) at 33. When Ferguson's counsel verified whether the resentencing court knew it was not bound by the prior sentencing decision, the resentencing court responded in the affirmative. The resentencing court stated that it gave consideration to the prior sentencing decision, but otherwise, "based on the totality of the circumstances," it was not persuaded to grant an exceptional downward sentence. 1 VRP (Jan. 18, 2023) at 34.

Ferguson argues that the resentencing court only "paid lip service to his authority to exercise discretion but simply reimposed what he believed to be the high-end sentence without actually exercising independent discretion." Br. of Appellant at 8. However, Ferguson's argument is unpersuasive. The record clearly shows that the resentencing court considered Ferguson's request for an exceptional downward sentence, considered mitigating factors presented, and exercised its discretion to impose a high end standard-range sentence in light of all the information presented. *See Grayson*, 154 Wn.2d at 342.

To support his argument, Ferguson relies entirely on *Dunbar*, which held that a party's resentencing pursuant to *Blake* must be conducted de novo. *State v. Dunbar*, 27 Wn. App. 2d 238, 246, 532 P.3d 652 (2023) ("Without a limitation, the resentencing court should consider sentencing de novo and entertain any relevant evidence that it could have heard at the first sentencing.").

*Dunbar* concluded that the sentencing court had committed reversible error when it "refus[ed] to entertain Dunbar's request for a lower sentence based on his purported rehabilitation." *Id.* at 243.

The State asserts that *Dunbar* should be rejected because *Dunbar* purportedly conflicts with Washington Supreme Court precedent. Specifically, the State argues that the resentencing court did not need to consider evidence of Ferguson's rehabilitation efforts because RCW 9.94A.340 prohibits "'exceptional sentences based on factors personal in nature to a particular defendant.'" Br. of Resp't at 13 (quoting *Law*, 154 Wn.2d at 97); *see* RCW 9.94A.340 (stating "[t]he sentencing guidelines and prosecuting standards apply equally to offenders in all parts of the state, without discrimination as to any element that does not relate to the crime or the previous record of the defendant"). The State contends that considerations such as rehabilitation and familial support are personal.

However, the State does not address recent cases such as *McFarland* and *Glant*, which hold that every defendant is entitled to have a request for an exceptional downward sentence actually considered, and it is reversible error for a sentencing court to categorically *not* consider such requests. *McFarland*, 189 Wn.2d at 56; *Glant*, 13 Wn. App. 2d at 376-77; *see also Grayson*, 154 Wn.2d at 342 ("The failure to consider an exceptional sentence is reversible error."). Accordingly, Ferguson was entitled to have his request for an exceptional downward sentence considered by the resentencing court, and depending on the basis for the resentencing court's decision, to appeal his sentence.

The State next argues that *Dunbar* fails to address forerunners such as *Kilgore* and *Barberio*, which stand for the proposition that a resentencing court has the discretion to choose whether it conducts a full de novo sentencing. *See State v. Kilgore*, 167 Wn.2d 28, 42, 216 P.3d

11

393 (2009); *State v. Barberio*, 121 Wn.2d 48, 51, 846 P.2d 519 (1993). But regardless of the applicability of *Dunbar*, the record shows that the resentencing court actually considered Ferguson's request for an exceptional downward sentence, comporting with *McFarland* and *Glant*. And the resentencing court considered Ferguson's rehabilitative efforts. An exercise of independent discretion does not dictate the sentencing court to accept or agree with a defendant's request.

The resentencing court did not fail to meaningfully consider Ferguson's request or fail to exercise its independent discretion. The resentencing court's exercise of independent discretion necessarily means it did not categorically refuse to entertain Ferguson's request for a mitigated downward sentence. *Glant*, 13 Wn. App. 2d at 377. Therefore, the resentencing court did not abuse its discretion when it resentenced Ferguson.

B.    MODIFICATION OF JUDGMENT AND SENTENCE

Ferguson argues that the resentencing court exceeded its authority under CrR 7.8 by amending a "valid sentence" based on "judicial" error. Br. of Appellant at 13. The State argues that the resentencing court did not amend the judgment and sentence between the January and February 2023 hearings because the January judgment and sentence, which provided for 336 months, was never filed. Accordingly, the State argues, CrR 7.8 does not apply. The State also argues that even if CrR 7.8 did apply, the modification would have been proper under CrR 7.8(a). We agree with the State.

1.    Legal Principles

"Washington is a written order state." *State v. Huckins*, 5 Wn. App. 2d 457, 469, 426 P.3d 797 (2018). A trial court's oral statements are no more than a "'verbal expression of [its] informal

opinion at that time,'" subject to further alteration or modification. *Id.* (alteration in original) (quoting *State v. Dailey*, 93 Wn.2d 454, 458, 610 P.2d 357 (1980)). It has no final or binding effect unless incorporated into a written judgment. *See State v. Friedlund*, 182 Wn.2d 388, 394-95, 341 P.3d 280 (2015).

CrR 7.8 allows a trial court to grant a party relief from a final judgment or order in certain circumstances. *See* CrR 7.8. Clerical mistakes, resulting from "oversight or omission," may be corrected by the trial court at any time on its own initiative or upon the motion of a party. CrR 7.8(a). Additionally, a party may move for relief from a final judgment if there was a mistake; newly discovered evidence; fraud; the judgment was void; or any other reason justifying relief. CrR 7.8(b).

A clerical mistake is one that does "not embody the trial court's intention as expressed in the trial record." *State v. Morales*, 196 Wn. App. 106, 117-18, 383 P.3d 539 (2016), *review denied*, 187 Wn.2d 1015 (2017). An amended judgment, correcting a clerical error, simply "corrects the language to reflect the court's intention or adds the language the court inadvertently omitted." *State v. Rooth*, 129 Wn. App. 761, 770, 121 P.3d 755 (2005). If an amendment to a judgment and sentence does not do either of those things, then the error is judicial and a court cannot amend the judgment and sentence. *Id.*

2. Trial Court Did Not Exceed Authority

Ferguson argues that the resentencing court "intended to impose 336 months, and its oral and written orders from the [January] resentencing comport with that intent." Br. of Appellant at 20. Ferguson further argues that the error existed at the time of the judgment and sentence's "entry" in January 2023. Br. of Appellant at 20.

Here, the record shows that the high end of Ferguson's sentencing range should have been 436 months. During the January hearing, the State correctly stated the individual sentencing ranges for Ferguson's convictions: "189 to 289 months" for second degree murder and "117 to 147 months" for first degree assault. 1 VRP (Jan. 18, 2023) at 15. However, when the State added the ranges together, it stated, "336 months." 1 VRP (Jan. 18, 2023) at 15. Following the State's use of "336 months," the resentencing court stated:

> [T]he question before this Court is whether the defense has persuaded this Court for one or more reasons as cited in the briefing, that the Court should depart and not hold out the letter and the spirit of that high end sentencing range, which my predecessor gave back after the trial.
>
> It's the conclusion of this Court . . . that the case for that has not been made. And, I'm going to order the sentence to remain at the high end, albeit, with the new sentencing range, consecutive terms, constituting and calculating up to a total of 336 months.

1 VRP (Jan. 18, 2023) at 32-33. It is evident from the record that the resentencing court was merely repeating the number used by the State.

Regardless, the January judgment and sentence that included the 336 month number was never entered. The record shows that the court clerk discovered the mathematical error immediately following the January hearing and notified the resentencing court. The court never entered the judgment and sentence. *See Friedlund*, 182 Wn.2d at 394-95. CrR 7.8 simply does not apply as it governs circumstances for relief from a *final* judgment or order. *See* CrR 7.8. "Washington is a written order state" and any oral statements are informal expressions that are subject to alteration. *Huckins*, 5 Wn. App. 2d at 469.

During the follow-up hearing in February, the resentencing court stated that its reference to 336 months was the "functional equivalent of the Court . . . misspeaking." 1 VRP (Feb. 10,

2023) at 49. The resentencing court further stated: "[I]t was clearly the intent of the Court, based upon prior ruling of the case in the trial for the high end of the range. . . . So, the 436, the Court's gonna stay with that, because that is the mathematically correct number, which represents the sum and substance of the Court's ruling therefore." 1 VRP (Feb. 10, 2023) at 49-50. The resentencing court entered the judgment and sentence reflecting a total confinement of 436 months.

Because a judgment and sentence reflecting 336 months was never entered, CrR 7.8 does not apply. And because the sentencing court corrected a mathematical miscalculation prior to entering the judgment and sentence and Washington is a written order state, the resentencing court did not exceed its authority when it corrected Ferguson's judgment and sentence before entering the judgment and sentence after the February hearing.[4]

## CONCLUSION

The resentencing court exercised its discretion and considered Ferguson's request for an exceptional downward sentence. And the resentencing court merely modified an unfiled judgment and sentence to correct a mathematical error before entering the judgment and sentence. Therefore, the trial court did not err, and we affirm.

---

[4] We note that no party filed a CrR 7.8 motion specifically pertaining to the discrepancy between 336 months and 436 months. Regardless, even if CrR 7.8 applied, the resentencing court would have had authority to modify the judgment and sentence under CrR 7.8(a). A clerical mistake results from oversight or omission and any modifications to a final judgment simply "correct[] the language to reflect the court's intention." *Rooth*, 129 Wn. App. at 770; CrR 7.8(a).

Here, the record is clear that the resentencing court merely corrected the 336 months to 436 months to reflect its intention to re-sentence Ferguson to the high end of the sentencing range. Therefore, the resentencing court would have had authority to amend the judgment and sentence under CrR 7.8(a).

No. 57976-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, J.

Glasgow, C.J.